# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA WAGNER and HEATHER LIND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF INYO,<br><br>Defendant. | No. 1:17-cv-00969-DAD-JLT<br><br>ORDER APPROVING SETTLEMENT AGREEMENT AND DISMISSING CASE<br><br>(Doc. No. 20) |

This matter is before the court on the joint motion for approval of the settlement agreement. (Doc. No. 20.) On October 2, 2018, that motion came before the court for hearing. Attorney Isaac Sean Stevens appeared on behalf of plaintiffs Amanda Wagner and Heather Lind, individually and on behalf of all others similarly situated. Attorney Barbara S. Van Ligten appeared on behalf of defendant County of Inyo. Having considered the briefing, and having heard from counsel, the court will grant the motion to approve the settlement agreement.

## BACKGROUND

On July 20, 2017, plaintiffs commenced this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, based on defendant's use of an illegal compensation computation method, which under-calculated plaintiffs' regular rate of pay and

1

resulted in underpayment with respect to overtime hours. (Doc. No. 1 ("Compl.") at ¶ 4.) In their complaint, plaintiffs allege that they and the putative class members were denied proper compensation in violation of the FLSA when defendant failed to include all statutorily required forms of compensation in the regular rate of pay used to calculate plaintiffs' overtime compensation. (*Id.* at ¶ 2.) After the filing of the complaint, seven additional individuals opted in to this action. (Doc. No. 22-1 ("Mastagni Decl.") at ¶ 8.) On November 7, 2017, the parties submitted a stipulation for conditional certification of an FLSA collective action, and defined the class as consisting of "all individuals who worked for Defendant since July 20, 2014 who worked overtime and received cash in lieu of benefits payments." (Doc. No. 8 at ¶ 4.) On November 21, 2017, the court approved the parties' stipulation. (Doc. No. 9.)

On May 11, 2018, the parties notified the court that they had settled this matter, and were subsequently directed to file dispositional documents and the settlement agreement for court approval. (Doc. Nos. 18, 19.) On June 13, 2018, the parties submitted a stipulation for approval of the settlement agreement. (Doc. No. 20.) On June 28, 2018, the undersigned directed the parties to submit supplemental materials sufficient to permit a finding that the proposed FLSA settlement is fair, adequate, and reasonable. (Doc. No. 21.) The parties did so on July 19, 2018. (Doc. No. 22.)

## LEGAL STANDARD

Settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014); *see also Dashiell v. County of Riverside*, No. EDCV 15-00211 JGB (SPx), 2018 WL 3629915, at *3 (C.D. Cal. July 19, 2018). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

/////

2

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because to do so would shield employers from the full cost of complying with the statute. *Id.*; *see also Dashiell*, 2018 WL 3629915, at *3 ("The reason for this requirement is to safeguard against an employee waiving his or her claims for wages, overtime compensation, or liquidated damages when there is no actual dispute between the parties.").

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also*

3

*Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), *recommendations adopted*, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved in order to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

## DISCUSSION

**A.     Bona Fide Disputes**

Under the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), the payment of cash in lieu of health benefits ("CIL compensation") must be included in the calculation of the regular rate of pay for overtime payments under the FLSA. There appears to be no dispute here that defendant is liable for overtime payments under *Flores*. (*See* Doc. No. 22 at 8.) The parties take the position that there is a dispute as to the extent of defendant's liability. First, the parties suggest that due to the uncertainty in the law prior to the Ninth Circuit's decision in *Flores*, it is disputed here whether defendant failed to act in good faith when it omitted CIL compensation in its calculation of overtime compensation, which would subject defendant to liquidated damages. *See* 29 U.S.C. §§ 216(b), 260. *But see Kerzich v. County of Tuolumne*, ___F. Supp.3d___, ___, 2018 WL 3923645, at *7 (E.D. Cal. Aug. 14, 2018) ("The argument that the law was not sufficiently settled prior to the decision in Flores is not sufficient to entirely exclude the possibility of recovering liquidated damages, since such damages were awarded in *Flores* itself.") Second, the parties suggest that the applicable statute of limitations is also disputed. In this regard, under the FLSA the statute of limitations is two years, which may be

4

extended to three years if the violation is found to be willful.  29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988).  The parties report that it is disputed whether the FLSA violation at issue in this case was willful.  All of these allegedly disputed issues could impact the extent of defendant's FLSA liability in this case.

The court need not determine whether these issues pose a bona fide dispute in this case.  That is because the parties agree that the proposed settlement amount represents at least 100 percent of what plaintiffs would expect to recover if this case were litigated to judgment.  (Doc. No. 22 at 7.)  The settlement amount represents an agreed-upon amount for all overtime compensation allegedly owed to plaintiffs, plus an equal amount of liquidated damages, using the longer three-year statute of limitations.  (*Id.*)  Essentially, defendant is agreeing not to contest issues of willfulness and bad faith for the purpose of settling this matter, while still claiming that these issues would result in a reduced recovery for plaintiffs if this case proceeded to trial.  (*See id.* at 9–10.)  As noted, because defendant is not contesting liability at this stage in the proceedings, it could be suggested that no bona fide dispute exists here.  Nonetheless, that fact alone does not compel rejection of the settlement because the value of plaintiffs' claims has not been discounted as part of the settlement.  *See McManus v. City of Ceres*, No. 1:17-cv-00355-DAD-BAM, 2018 WL 4262126, at *3 (E.D. Cal. Sept. 6, 2018).  To the contrary, each plaintiff in this case will be receiving an amount greater than what could possibly be recovered under the FLSA, since the Settlement Agreement provides each plaintiff with an additional $494.06 "to ensure that all Plaintiffs receive[ ] a substantial recovery."  (Doc. No. 22 at 11).  Approval of the parties' proposed settlement agreement thus would not thwart the purposes of the FLSA.  The court therefore proceeds to consider the fairness and reasonableness of the proposed settlement.

**B.    The Proposed Settlement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA.  *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).  Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA:  (1) the plaintiff's range of possible recovery; (2) the stage of

proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3; *Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017). The court addresses each of these factors below.

### 1. Plaintiffs' Range of Possible Recovery

Under the terms of the Settlement Agreement, defendant will pay plaintiffs a total sum of $8,650.00. (Doc. No. 22 at 10.) Roughly half of this amount, $4,203.46, is based on FLSA damages, calculated over a period of three years and then doubled to account for liquidated damages. (*Id.* at 10–11.) This works out to $467.05 per plaintiff. These numbers were based on an analysis of defendant's time and payroll records produced during informal discovery. (Mastagni Decl. at ¶¶ 9–11.)

Each plaintiff will then be awarded an additional $494.06, which plaintiffs' counsel explains is "to ensure that all Plaintiffs received a substantial recovery." (*Id.* at ¶ 13.) Because of this additional award, plaintiffs' counsel avers that the total dollar amount awarded to each plaintiff is greater than what each plaintiff could expect to receive if this case were to proceed to trial and they prevailed. (*Id.*) Because each plaintiff will be compensated at more than twice their maximum potential recovery under the FLSA, this factor weighs heavily in favor of approving the Settlement Agreement.

### 2. The Stage of the Proceedings and the Amount of Discovery Completed

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement. The Ninth Circuit's decision in *Flores* makes it likely that plaintiffs would prevail in

some aspect of their claim. The parties have engaged in informal discovery over a period of months, which included an exchange of time and payroll data to evaluate the potential range of recovery. (Mastagni Decl. at ¶¶ 9–10.) Plaintiffs' counsel then analyzed these records and calculated damages based upon various legal outcomes. (*Id.* at ¶ 11.) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

       3.      <u>The Seriousness of the Litigation Risks Faced by the Parties</u>

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Here, the named plaintiffs believe their claims are meritorious but concede that if this case were to proceed to trial, they would face uncertainties about how to calculate damages due to the disputes between the parties. In that event, plaintiffs might not ultimately receive the $494.06 they will receive under the Settlement Agreement, which compensates them above and beyond any recovery they could receive under the FLSA. The court finds it likely that further prolonging this litigation would generate needless litigation expenses for both sides, and that both plaintiffs and defendant will likely benefit financially by settling this action now. Accordingly, consideration of this factor weighs in favor of approval of the parties' FLSA settlement.

       4.      <u>The Scope of Any Release Provision in the Settlement Agreement</u>

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment

7

in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the release provision is limited to all "grievances, disputes or claims of every nature and kind, known or unknown, foreseen or unforeseen, arising from or attributable to Plaintiffs' claims in this Action up to and including the Effective Date of [the] Agreement." (Doc. No. 22 at 13.) At oral argument, counsel for both plaintiffs and defendant confirmed their understanding that this release provision releases only claims under the FLSA. With this understanding, the court concludes that the release provision is appropriately limited. Consideration of this factor therefore also weighs in favor of approval of the FLSA settlement.

        5.      <u>The Experience and Views of Counsel and the Opinion of Participating Plaintiffs</u>

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11–cv–05188–WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiffs' counsel, attorney David Mastagni, has considerable experience in litigating and settling cases asserting liability pursuant to the *Flores* decision and has represented to the court that this settlement is fair, adequate, and in the best interests of the class members. (Mastagni Decl. at ¶ 14.) In addition, all plaintiffs had an opportunity to review the terms of the Settlement Agreement, and all have accepted its terms. (*Id.* at ¶ 15.) Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

        6.      <u>The Possibility of Fraud or Collusion</u>

Here, the court finds that there is a low probability of fraud or collusion because the parties used payroll record data to calculate back overtime pay and liquidated damages, and provided all plaintiffs the opportunity to review their settlement amounts, the methodology used to calculate those amounts, and the amount of attorneys' fees and costs. (*Id.*) As noted, plaintiffs' counsel asserts that the settlement amount is greater than the maximum amount that

plaintiffs could recover at trial. (*Id.* at ¶ 14.) This approach, based on an objective analysis of plaintiffs' time records, "guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179.

In addition, there is nothing in the record to suggest plaintiffs' counsel "allowed the pursuit of their own self-interests . . . to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The requested award for attorneys' fees and costs does not detract from plaintiffs' recovery, since all plaintiffs will receive more than the full amount of what they are allegedly due. As such, this settlement lacks any evidence of more "subtle signs" of collusion, such as, for example, when counsel receive a disproportionate distribution of the settlement, or when the plaintiff class receives no monetary distribution but counsel are "amply rewarded." *Id.* at 947.

Upon considering the totality of the circumstances, as reviewed above, the court finds that the proposed settlement is fair and reasonable.

**C.     Attorneys' Fees and Costs**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis.

*Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD–Rental*, 779 F.3d at 955.

According to the terms of this settlement, plaintiffs' counsel will be paid $4,825 in attorneys' fees, plus an additional $525 in costs, out of a total settlement sum of $15,000. (Doc. No. 22 at 7.) Attorneys' fees and costs represent 35.5 percent of the maximum settlement amount, which is above the benchmark, and also slightly above comparable awards in other cases. *See Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at *6 (E.D. Cal. Mar. 13, 2018) (approving attorneys' fees and costs award of $43,414.92, which represented thirty percent of the total settlement amount); *Goodwin v. Winn Mgmt. Grp.*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *7 (E.D. Cal. Feb. 23, 2018) (approving attorneys' fees of $75,000 in a settlement of a class action and FLSA collective action, which was thirty percent of the total settlement amount); *Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs award of $52,069 in a settlement of a FLSA collective action, which was thirty-one percent of the total settlement amount). *But see Selk*, 159 F. Supp. 3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of a FLSA collective action, which was forty-four percent of the total settlement amount).

The court turns to the lodestar amount to cross-check whether a 35.5 percent award of attorneys' fees is appropriate here. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July

21, 2008)). The court typically applies a lodestar multiplier after multiplying a reasonable hourly rate by the number of hours worked. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts").

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Fresno Division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with twenty-one years of experience); *Gong–Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 839–40 (E.D. Cal. 2016) (concluding that Fresno Division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14–cv–00964–MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years of experience); *Rosales v. El Rancho Farms*, No. 1:09–cv–00707–AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO,

2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Since these rates are only for the purposes of generally cross-checking the reasonableness of an award of one-third of the common fund as attorneys' fees, the court finds that the rates requested by plaintiffs' counsel in a prior case before this court are sufficient for this purpose and will employ those rates in calculating the lodestar. *See Beidleman*, 2018 WL 1305713, at *7. The parties' motion states that after applying the hourly rates previously approved by the court in *Emmons*, fees in this case would range from $25,159.50 on the low end to $33,089.50 on the high end for the two primary attorneys on this matter. (Doc. No. 22 at 18.) Those numbers would increase further when accounting for the hours expended by plaintiffs' counsel's paralegals and a forensic accountant. (*Id.*) Those amounts far exceed the $5,325 in attorneys' fees and costs that are sought here. The court therefore approves the award of $5,325 in attorneys' fees and costs.

**D.  Incentive Award**

At its discretion, a district court may award incentive payments to named plaintiffs in class action cases or FLSA collective actions. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *see also Selk*, 159 F. Supp. 3d at 1181 (discussing FLSA collective action cases).

To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by bringing suit against his or her former employers. *Rodriguez*, 563 F.3d at 958–59.

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition, district courts have declined to approve incentive awards that represent an unreasonably high

12

proportion of the overall settlement amount, or that are disproportionate relative to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365–66; *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). These courts have reasoned that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives. *See Radcliffe*, 715 F.3d at 1165; *Staton v. Boeing Co.*, 327 F.3d 938, 977–78 (9th Cir. 2003).

      Here, the Settlement Agreement provides $500 to each named plaintiff, for a total of $1,000. (Doc. No. 22 at 15.) This amounts to roughly 7 percent of the total settlement fund, which is well above other incentive awards approved by this court. *See, e.g.*, *Goodwin*, 2018 WL 1036406, at *11 (awarding the named plaintiff $3,750, equivalent to 1.5 percent of the total settlement fund); *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 3190341, at *9 (E.D. Cal. July 27, 2017) (awarding the two named plaintiffs $20,000 and $15,000 respectively, which amounted to 0.2 percent and 0.3 percent of the total settlement fund). However, as compared with those cases, the dollar amounts here are quite small, with each plaintiff receiving only $500. In addition, even including the incentive award, the named plaintiffs' recovery is not out of proportion to that of the remaining plaintiffs. *See Goodwin*, 2018 WL 1036406, at *11 (declining to award the full incentive amount requested by plaintiff because such an award would be roughly fifteen times the average settlement share). The named plaintiffs' recovery is less than twice the amount the other plaintiffs will receive. Considering this, and because the total value of this case is relatively small, the court approves an incentive award in the amount of $500 to each of the named plaintiffs.

/////

**CONCLUSION**

For the forgoing reasons:

1. The parties' settlement agreement including the award of attorneys' fees, costs and incentive awards, which is incorporated herein by reference, is approved as fair, reasonable, and just in all respects, and the parties shall perform the settlement agreement in accordance with its terms;

2. The court expressly retains jurisdiction over this action for purposes of enforcing the parties' settlement agreement;

3. This action is hereby dismissed with prejudice; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **October 17, 2018**

UNITED STATES DISTRICT JUDGE